UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CASEY JACOBS                                                                                        PLAINTIFF

VS.                                                           CIVIL ACTION NO. 3:07cv00383-DPJ-JCS

McALISTER'S CORPORATION                                                              DEFENDANT

**ORDER**

This employment dispute is before the Court on the equitable estoppel aspect of Defendant's Motion for Summary Judgment [46] and Plaintiff's Motion to Reconsider [87]. The Court, having fully considered the parties' submissions and the applicable authorities, finds that summary judgment of Plaintiff's breach of contract claim should be entered and that the motion for reconsideration should be denied.

**I.      Facts/Procedural History**

Plaintiff Casey Jacobs is a former Catering Manager for Defendant McAlister's Corporation, a delicatessen chain with a location in Madison, Mississippi. When Jacobs announced that she was pregnant in the Fall of 2006, she was allegedly told that she could return to work January 2, 2007. McAlister's handbook stated that "[if] released to return to work during the job protection period, you will return to your former position." Jacobs never received a copy of the handbook. While on leave, McAlister's alleges that Plaintiff committed a work-rule violation by returning to the store and taking cash from the register without permission as reimbursement for her company cell phone. When Jacobs returned, McAlister's informed her that she had been replaced but that she could remain employed in a part-time capacity. Plaintiff quit, exhausted her administrative remedies and filed suit alleging violations of the Pregnancy

Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"); the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and breach of contract.

On May 23, 2008, the Court denied McAlister's Motion for Summary Judgment with respect to the FMLA claim and set the remaining issues for hearing. Following oral argument, the Court granted McAlister's motion regarding the PDA claim, and Plaintiff has now moved the Court to reconsider its holding. In addition, the Court rejected Plaintiff's argument that the employee handbook created an exception to her at-will employment status, but the Court reserved judgment with respect to Plaintiff's argument that McAlister's is equitably estopped from denying the leave benefits outlined in the handbook. The parties were instructed to provide supplemental memoranda with respect to that issue.

**II.     Analysis**[1]

    A.     Equitable Estoppel

Plaintiff first argues that she will comply with the Court's request for additional briefing "for informational purposes," but she insists that "McAlister's did not ask for summary judgment on the equitable estoppel claim." Plaintiff's Estoppel Memorandum at 1. The Court rejects this contention. The equitable estoppel "claim" appears as follows in the "Facts" section of Plaintiff's Amended Complaint: "The defendant is equitably estopped from denying that the

---

[1] This opinion references a number of Plaintiff's memoranda, including her Memorandum in Opposition to Defendant's Motion for Summary Judgment [50], Plaintiff's Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's MSJ Memorandum") [51], Plaintiff's Sur-Rebuttal Memorandum in Opposition to Defendant's Motion for Summary Judgment ("MSJ Sur-Rebuttal") [65], Memorandum in Support of Equitable Estoppel to Deny Existence of Contract ("Plaintiff's Estoppel Memorandum") [95], and Memorandum in Support of Plaintiff's Motion to Reconsider ("Plaintiff's Reconsideration Memorandum") [89].

plaintiff was not [sic] entitled to leave until 1/2/07 under either the FMLA or its medical leave policy." Complaint ¶¶ 10, 26.  However, in a section titled "Violations of Law," where she lists her claims, Jacobs makes no reference to equitable estoppel or detrimental reliance whatsoever. Complaint ¶¶ 27-29.  The Court nevertheless ruled, based on notice pleading, that the issue was sufficiently reflected in the Amended Complaint as it related to the FMLA and contract claims, even if estoppel was not pled as a stand-alone claim.  *See* May 23, 2008 Order, n. 1 [74]; Bench Ruling (attached to [89] as Ex. "A") at 8.  Given the less than artful way Plaintiff pled this theory, it is not surprising that Defendant did not expressly address it as a separate claim in its original motion for summary judgment.  Nevertheless, Defendant's motion sought judgment as "to all of the claims asserted by Plaintiff Casey Jacobs."

In addition, there is no prejudice to Jacobs in deciding this issue because she and McAlister's were given repeated opportunities to brief it.  Jacobs addressed the issue in her MSJ Memorandum and in her MSJ Sur-Rebuttal.  The parties again argued equitable estoppel during the hearing, and the Court thereafter solicited additional briefs.  Thus, the Court finds that the equitable estoppel issue is ripe for consideration.

More substantively, equitable estoppel "precludes a party from denying a material fact which he has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed." *Christian Methodist Episcopal Church v. S & S Const. Co.*, 615 So. 2d 568, 571 (Miss. 1993).  Equitable estoppel requires proof that (1) the plaintiff believed and relied on some representation; (2) the plaintiff changed her position as a result of the representation; and (3) the plaintiff suffered a detriment or prejudice caused by her change of position.  *Covington County v. Page*, 456 So. 2d 739, 741

3

(Miss. 1984). The question for the Court is whether this theory applies in the context of an at-will employee who is seeking to estop an employer from denying the provisions of an employee handbook.

As noted, the Court previously rejected Plaintiff's argument that the handbook constituted a contract. Plaintiff now claims that "[e]ven if the handbook is not a contract, the plaintiff can still pursue a claim for equitable estoppel." Plaintiff's Estoppel Memorandum at 4. More specifically, Jacobs argues that McAlister's gave her a return date based on the handbook and she relied on that date to her detriment. Accordingly, she invokes equitable estoppel to prevent Defendant from arguing: "(1) the handbook is not an enforceable contract, and (2) even if it can be a contract, the plaintiff failed to meet the condition of returning to work on 11-7-06 when her doctor released her." *Id*. at 1.

The first defense Jacobs wishes to preclude–that the handbook is not a contract–fails initially on factual grounds. Jacobs has not contended in her submissions that she was told the handbook was an enforceable contract, something the handbook itself disavows. *See Dancer v. Bryce Corp.*, No. 1:04CV306, 2006 WL 897964, at *5 (N.D. Miss. April 4, 2006) (rejecting claim that employer was estopped from disavowing handbook as contract where handbook expressly stated that employment was at-will and employer made no representations that it was a contract). Plus, there is no dispute that Jacobs never read the handbook. Jacobs cannot demonstrate reasonable reliance on specific handbook terms of which she was apparently unaware.

The second defense Plaintiff wishes to estop–that she failed to meet the conditions for returning from leave–relates to the handbook provision that employees must return when released

4

by a doctor. Plaintiff was apparently released before her actual return but remained on leave due to the alleged return date she was given. However, McAlister's observes, without contradiction in Plaintiff's subsequent submission, that it does not rely on this alleged failure. This eliminates the claimed legal detriment, and otherwise renders the estoppel issue moot. *See Dancer*, 2006 WL 897964, at *5 (rejecting estoppel claim where termination of employment was not related to handbook provision plaintiff invoked); *Dubard v. Biloxi H.M.A., Inc.*, 778 So. 2d 113, 114 (Miss. 2000) (rejecting equitable estoppel argument where defendant did not assert fact plaintiff claimed it should be estopped from asserting).[2]

Other arguments affect both defenses Jacobs wishes to estop. To begin with, Jacobs's at-will status precludes her attempt to show detrimental reliance under these facts. Although unpublished, *Vannoy v. Saks Inc.*, offers persuasive authority on this point. 87 F. App'x 349, 351 (5th Cir. 2004) (applying Mississippi law). There, the plaintiff alleged that his employer induced him to accept early retirement by making an oral promise of future consulting work. When the employer broke the promise, the employee sued and attempted to invoke equitable estoppel. The court rejected the argument, holding, *inter alia*, that the plaintiff was an at-will employee who could be discharged by the employer "at any time for a good reason, a wrong reason, or no reason." *Id*. at 352 (internal citations omitted) (internal quotations omitted). Therefore, the employee "did not relinquish any rights by retiring in May 1999." *Id.* Jacobs was similarly

---

[2] Jacobs's attempt to estop this second argument is a more relevant application of equitable estoppel in one regard. When the Court rejected Plaintiff's claim that the handbook created a contract of employment, it alternatively observed that even if a contract existed, Jacobs failed to comply with the return requirements. Had she read the policy, that argument would be estopped because she returned when instructed. However, this observation was not the core basis for rejecting her attempt to expand at-will employment, and equitable estoppel does not otherwise diminish the Court's rationale.

employed. Thus, her alleged reliance on a specific return date to resume at-will employment did not constitute legal detriment in the context of these facts.[3]

Even if the jury could infer that McAlister's promised Ms. Jacobs her same position upon return, which requires speculation since she was not told that her position would remain available, the record demonstrates that conditions changed after Plaintiff was given the return date. There is no dispute that while on leave, Jacobs returned to her work-site and withdrew money from a cash register. Although arguably entitled to reimbursement, Defendant claims that she was not authorized to take the money without permission while on a leave of absence. Moreover, Plaintiff's General Manager, Sarah Shaffery, testified that Plaintiff falsely claimed that Shaffery and Area Director Matt Sheppard gave her permission to withdraw the cash. Ex. "G" to Plaintiff's MSJ Memorandum ("Shaffery Depo.") at 30 ("All I knew is that she told my managers that I had approved it and my area director had approved it. Neither one of us had spoken to her regarding her getting money out of our cash register."). Sheppard testified that he decided to replace Jacobs in part due to the cash register incident which occurred after Jacobs was given a return date. Ex. "D" to Defendant's Motion for Summary Judgment ("Sheppard Depo.") at 67. An employer is not estopped from changing its mind. *See Suddith v. Univ. of S.*

---

[3]Although not a perfect fit, this analysis finds support in those cases holding that leaving or losing a job in reliance upon the promise of future employment fails to demonstrate legal detriment. *See, e.g.*, *Bowers Window & Door Co. v. Dearman*, 549 So. 2d 1309, 1315 (Miss. 1989). Plaintiff's Estoppel Memorandum raises and then spends considerable time distinguishing *Dearman* as an outlier opinion that should be limited to its facts. However, *Dearman* is consistent with a long line of state and federal cases interpreting Mississippi law. *See, e.g., Solomon v. Walgreen Co.,* 975 F.2d 1086, 1089 (5th Cir. 1992) (quitting job in reliance on promise of future employment fails to demonstrate legal detriment). The Court recognizes the factual distinction in this case, but finds that these holdings are at least consistent with the Court's analysis. So too, this Erie-guess complies with Mississippi's long guarded at-will employment doctrine.

*Miss.*, 977 So. 2d 1158, 1180 (Miss. Ct. App. 2007) (holding that employer cannot be estopped from "changing [its] genuinely held opinion about [the plaintiff's] suitability for employment"). Plaintiff failed to address this issue in her response.

The balance of Plaintiff's Estoppel Memorandum encourages the Court to consider *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 595 (7th Cir. 2008). However, as Plaintiff correctly observes, *Peters* is based on different substantive law and is not binding precedent for this Court. Plaintiff may not utilize equitable estoppel to avoid summary judgment of her contract claim.

      B.      <u>Motion to Reconsider Dismissal of PDA Claim</u>

Plaintiff's Motion to Reconsider suggests that the Court committed plain error on multiple occasions when it granted Defendant's motion for summary judgment with respect to the PDA claim. Much of the motion relates to discriminatory comments that Area Director Ivan Ostrander allegedly made when he told Jacobs she had been replaced. More particularly, Plaintiff asserts as follows:

> (1) the district court erred in finding that Ostrander's comment was open to inferences, (2) the district court did not address the alternative issue about whether Ostrander was in a position to influence the decision; (3) the district court erred in holding that the plaintiff had to prove as a part of its [sic] *prima facie* case that the plaintiff was replaced by a person outside the protected proof [sic] or that similarly situated employees were treated better, and (4) the district court erred in excluding proof of Ostrander's remark the issue of [sic] in support of the plaintiff as [sic] *prima facie* case.

Plaintiff's Motion to Reconsider at 1.

Motions for reconsideration are not technically recognized in the Federal Rules of Civil Procedure, but they are properly considered under Rule 59(e) as motions to alter or amend

7

judgment. Such motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Instead, "a motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (citations and quotations omitted). The Court will consider Plaintiff's arguments under this standard in the order she presented them.

   *1. Direct Evidence*

  The first two assignments of error state that the Court incorrectly failed to find direct evidence of discrimination. The Court must analyze Plaintiff's PDA claim in the same way it would analyze a Title VII discrimination claim. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

> An employee can prove discrimination through direct or circumstantial evidence. If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus. Direct evidence is evidence which, if believed, proves the fact without inference or presumption.

*Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citations omitted).

  In this case, Plaintiff claims that Ivan Ostrander, a new Area Director, made discriminatory comments when informing her that she had been replaced as the Catering Manager. Neither Plaintiff's MSJ Memorandum nor her MSJ Sur-Rebuttal attempted to describe

the appropriate standard for evaluating such statements, and neither memorandum cited a single case supporting her direct evidence claim. Plaintiff now asserts that the Court applied an incorrect standard. While it is tempting to simply say Plaintiff waived the argument, the Court will comment more fully.

The correct legal standard is well summarized in *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007). First, "remarks may serve as sufficient evidence of . . . discrimination if the offered comments are: 1) pregnancy related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Id*. (citing *Brown v. CSC Logic, Inc*., 82 F.3d 651, 655 (5th Cir. 1996)). Courts within the Fifth Circuit "continue to apply the *CSC Logic* test when a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." *Id*. at 608 n.4 (citing *Laxton v. Gap, Inc*., 333 F.3d 572, 583 n. 4 (5th Cir. 2003)). Finally, in considering whether the speaker had authority to make the disputed employment decision, the court must look to "'who actually made the decision or caused the decision to be made, not simply to who officially made the decision.'" *Id*. at 608 (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). Thus, "'if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker,' the worker's discriminatory animus may be attributed to the employer." *Id*. (quoting *Russell*, 835 F. 3d at 227).[4]

---

[4]The Court rejects Plaintiff's suggestion to follow tests formulated in other federal circuits.

Turning to the facts, the Court acknowledges a threshold error. In her Amended Complaint, Plaintiff merely alleges that Ostrander informed her of the employment decision, offered her a part-time position as Assistant Catering Manager, and stated that "she was a new mom and this new position would allow her to spend more time with her baby." Amended Complaint ¶ 17. The Court found that this statement left room for inference and could be interpreted as an attempt to "sugar coat" the bad news. However, Plaintiff's affidavit goes further claiming that she asked why her hours had been cut and was told, "[A]s a new mom you cannot give full attention to the job and take catering to the next level." Ex. "A" to Plaintiff's MSJ Memorandum ("Jacobs Aff.") ¶ 18. Her deposition testimony was similar, though less definitive. Ex. "A" to Defendant's Motion for Summary Judgment ("Jacobs Depo.") at 209. Even if these more extensive comments require less inference, Plaintiff still fails to create a question of fact whether Ostrander was the decisionmaker.

The question is whether Ostrander "actually made the decision or caused the decision to be made . . . ." *Arismendez*, 493 F.3d at 608 (citations omitted). If he "possessed leverage, or exerted influence, over the titular decisionmaker," then the alleged discriminatory animus may be attributed to McAlister's. *Id*. (citations omitted). This Court previously ruled that "there is no credible evidence that [Ostrander] actually made the decision." Ex. "A" to Plaintiff's Motion to Reconsider at 2-3. That remains true, but the Court will better explain the holding in light of the test described in *Arismendez*.

McAlister's supported its motion with deposition testimony and affidavits stating that Richard Osborn, the Senior Director of Company Operations, and Matt Sheppard, the Area Director, made the subject decisions without input from Ostrander. Osborn, in his affidavit,

states: "Ivan Ostrander had absolutely no role in the decision to replace Casey Jacobs as the Catering Manager and to offer her the position of Assistant Catering Manager." Ex. "B" to Defendant's Motion for Summary Judgment ("Osborn Aff.") ¶ 18.  Sheppard testified that he made the decision to fill Plaintiff's Catering Manager position and that he informed Osborn of his intentions.  Sheppard Depo. at 67-68, 155-56.  Sheppard, who was replaced by Ostrander at the end of December 2006, denied having left that decision to Ostrander. *Id.* at 156.  Likewise, Ostrander confirmed that he "played absolutely no role" in the decision to replace Plaintiff or the decision to offer her a new position.  Ex. "G" to Defendant's Motion for Summary Judgment ("Ostrander Aff.") ¶¶ 7-8.  Instead, Ostrander stated that he was merely asked to assist Jacobs's General Manager, Sarah Shaffery, when she informed Plaintiff of the decision. *Id.* ¶ 9.  Osborn concurred, stating that he asked Ostrander to deliver the news with Shaffery, because Osborn was out of town.  Osborn Aff. ¶ 16.

      Plaintiff attempts to create a question of fact over Ostrander's involvement through circumstantial evidence.  The Court will look at each argument because the record is convoluted, and this inquiry also affects Plaintiff's claim that the Court erred in failing to consider the statement at the prima facie stage.  In doing so, the Court makes no effort to weigh the evidence.  Rather, the Court will determine whether Plaintiff's arguments are supported by competent record evidence and whether they create a genuine issue of material fact that rises above mere speculation and conjecture.

      Plaintiff first makes several arguments with respect to the timing of Ostrander's transition into Matt Sheppard's Area Director position.  She claims that in December 2006, Ostrander was transitioning in and that he and Sheppard had "*joint* responsibility . . . over the Madison store . . .

." Plaintiff's Reconsideration Memorandum at 3 (emphasis added). The record does establish that Ostrander transitioned into Sheppard's slot. However, Plaintiff has not offered record evidence that Ostrander and Sheppard had joint authority (assuming they ever did) at the time the decision was made.

For example, Plaintiff attempts to buttress this argument with sworn statements from Sheppard and employee Heather Smith, both of whom stated that Sheppard and Ostrander shared responsibilities in December 2006. A closer look unravels the argument. Heather Smith declared that Ostrander and Sheppard "split" duties "during December 2006" and that "the store manager called Ivan Ostrander when needed" after Sheppard left for vacation at the end of the year. Ex. "B" to Plaintiff's MSJ Memorandum ¶ 2. Splitting duties is not the same as being jointly responsible for the store. Plus, Smith fails to say when in December 2006 the split began. Sheppard testified Ostrander "took over" around the last week of December. Sheppard Depo. at 22. He also testified that he decided to replace Plaintiff, without input from Ostrander. Sheppard Depo. at 155-56.

Plaintiff also offers the deposition testimony of McAlister's Human Resources Director, Scott Stanford, who testified that although he did not "know exactly who" was there, Ostrander "possibly" participated in a meeting with other managers to discuss replacing Plaintiff. Ex. "F" to Plaintiff's MSJ Memorandum ("Stanford Depo.") at 45. Even if Ostrander attended the meeting, that would not prove he was the actual decisionmaker or that he exerted leverage over the titular decisionmaker(s). *Compare Arismendez*, 493 F.3d at 608 (finding the third prong was met where the speaker "initiated" the paperwork to terminate the plaintiff, the speaker signed the termination papers, and the decisionmaker admitted that all of his information regarding the

decision came from the speaker and he did not conduct any independent investigation). Moreover, Ostrander's attendance is a matter of speculation on the part of Stanford. Conclusory allegations, speculation, and unsubstantiated assertions are no substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

In a third argument, Plaintiff asserts that Ostrander "may have been" the only person available with any first-hand knowledge about Plaintiff's ability, making it "highly implausible" that Osborn made the decision to offer the part-time position. Plaintiff bases this argument on the following misstated and unsupported facts: Ostrander knew Jacobs, having worked with her the Summer of 2006; Osborn was new to the company and did not know Jacobs; Sheppard could not have given input because McAlister's terminated his employment when he returned from vacation in January 2007; and Shaffery, "denied that she had any input into the decision . . . ." Plaintiff's Reconsideration Memorandum at 3-4. This, as the argument goes, leaves Ostrander as the only plausible decisionmaker.

First, the Court finds no support in the cited exhibit for the averment that Ostrander worked with Plaintiff the Summer of 2006. Even if supported, this fact fails to demonstrate that in December 2006 Ostrander was the decisionmaker. Second, Plaintiff somehow claims that Shaffery "denied that she had *any* input into the decision." Reconsideration Memorandum at 4 (emphasis added). However, Shaffery testified that after Plaintiff took the cash from the register, she had separate conversations with Sheppard and Osborn regarding Plaintiff's performance. The conversations addressed Plaintiff's poor sales figures, her alleged punctuality and attendance problems, and the cash register incident. Shaffery Depo. at 25. Significantly, Shaffery testified

13

that she "discussed removing [Jacobs] from a full-time job," and she offered Sheppard and Osborn her opinions on moving Jacobs to the assistant position. *Id*. at 46.  As for Sheppard, he testified that he decided to replace Plaintiff *before* he left for vacation, without input from Ostrander, and that he discussed the situation with Osborn. *See, e.g.*, Sheppard Depo. at 155-56. Third, Plaintiff's argument that Osborn lacked knowledge of Plaintiff's performance and could not have made the decision without Ostrander is not supported by citation to the record and ignores Sheppard and Shaffery's testimony that they conveyed their knowledge and recommendations to Osborn. *See* Sheppard Depo. at 68; Shaffery Depo. at 24.  Accordingly, the Court must reject this factually flawed and otherwise speculative argument.

Finally, Plaintiff finds circumstantial evidence in Ostrander's presence when she returned to work and was offered the assistant position.  This fact is neither disputed nor helpful. McAlister's has offered record evidence that Ostrander's supervisor merely asked him to assist Shaffery in conveying the bad news. *See, e.g.*, Osborn Aff. ¶ 16 ("I was out of town on January 2, 2007, the date of Casey Jacobs' return.  Therefore, I instructed Sarah Shaffery Jacobs and Ivan Ostrander to offer Casey Jacobs the Assistant Catering Manager position.").  Plaintiff has identified no credible record evidence to the contrary.

The most Plaintiff can say is that it is "highly improbable" that Ostrander was not more involved in the decision.  However, the Court must determine whether she has created a question of fact through competent record evidence.  Mere speculation is not sufficient. *TIG Ins. Co.*, 276 F.3d at 759.  Here, the Court finds that the record creates no genuine issue of material fact whether Ostrander was the decisionmaker or "possessed leverage, or exerted influence, over" his supervisor, Osborn, or his predecessor, Sheppard. *Arismendez*, 493 F.3d at 608.

14

> 2.     *Burden Shifting*

Having determined that Plaintiff cannot state a direct evidence claim of discrimination, the Court is called to evaluate whether it erred in finding that she likewise failed to present a circumstantial case under the *McDonnel Douglas* paradigm.

> Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green* . . . . First, the plaintiff must establish a prima facie case of discrimination. Second, the [defendant] must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the [defendant] is only one of production, not persuasion, involving no credibility assessments. Third, if the [defendant] carries its burden, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the fact finder must decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination]. In making this showing, the plaintiff can rely on evidence that the [defendant's] reasons were a pretext for unlawful discrimination. [T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual.... Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant's] asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated.

*Russell*, 235 F.3d at 222 (internal quotations and citations omitted). Plaintiff claims that the Court applied the wrong prima facie case standard and further erred in excluding proof of Ostranders' remarks at the prima facie case stage. Plaintiff's Reconsideration Memorandum at 1.

> a.     Prima Facie Case Standard

According to Plaintiff, "the district court erred in holding that the plaintiff had to prove as a part of its [sic] *prima facie* case that (1) the plaintiff was replaced by a person outside the protected proof [sic] and (2) that similarly situated employees were treated better." Plaintiff's Reconsideration Memorandum at 1. The Court finds that Plaintiff waived these arguments.

15

Both sides observed that the Fifth Circuit employs various prima facie tests depending on the facts of the given case. In the present case, Plaintiff's MSJ Memorandum cited *Willis v. Coca Cola Enterprises*, for the prima facia test. 445 F.3d 413 (5th Cir. 2006) (cited in MSJ Memorandum at 10). *Willis* stated: "To establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." 445 F.3d at 420. This is a typical statement of the test in a disparate treatment case.

Not only did Jacobs cite this test, she also offered evidence in an effort to support a disparate treatment case at the prima facie stage. Plaintiff's MSJ Memorandum at 3, 4, 10. Moreover, during oral argument, Defendant asserted that Plaintiff had failed to establish a prima facie case of disparate treatment as alleged in her MSJ Memorandum. The Court expressly asked Plaintiff's counsel whether Defendant was applying the proper prima facie test, and counsel responded, "I think so. I think we have to show there were comparable employees treated differently." Counsel then argued the case exclusively under disparate treatment analysis, offering no other means for establishing a prima facie case. The Court applied the test Plaintiff cited and argued; Plaintiff now claims the Court applied the wrong test. Although other tests exist, the disparate treatment path for establishing a prima facie case is well recognized and is the only test Plaintiff asked the Court to apply during oral argument. Plaintiff may not now claim error in the Court's decision to apply the test she advanced. *Templet*, 367 F.3d at 478-79.[5]

---

[5] Plaintiff claimed in her MSJ Memorandum and again on reconsideration that a prima facie case existed because she asked to return to work one week early and McAlister's ignored the request and looked for a replacement. MSJ Memorandum at 10 [citing Ex. A1-3 (though she did not initially say so, she at first wanted to return on a part-time basis)]. Aside from the fact that she waived this argument during oral argument, this is not the *McDonnell-Douglas* scenario.

Plaintiff also argues that the Court committed plain error in requiring proof that "similarly situated" employees were treated differently at the prima facie stage of the analysis because such inquiry occurs only at the pretext stage. Plaintiff's Reconsideration Memorandum at 7. Again, this argument has been waived because it contradicts Plaintiff's position during the hearing and in her MSJ Memorandum. *Id*. Nonetheless, the argument is legally incorrect. Title VII opinions from the Fifth Circuit Court of Appeals routinely include the following articulation of the fourth prong of the prima facie test: "To establish prima facie case of employment discrimination [plaintiff] must establish that he . . . (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show[] that other *similarly situated* employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) (emphasis added) (citation omitted).[6]

In addition, Plaintiff claims "[i]t was error to require proof of a replacement from outside the protected class as a part of the prima facie case." Plaintiff's Reconsideration Memorandum at 7. Plaintiff misconstrues the Court's holding. The Court did not require such proof, but was merely noting this alternative method for establishing a prima facie case. *See, e.g., id.*; *DeCorte*

---

Plaintiff was not a new hire; she was replaced. And, the position was not left open indefinitely, Sheppard began searching for a replacement when Plaintiff took the cash. Plaintiff's ultimate replacement applied for the position the same day Plaintiff sent an email expressing a desire to return one week early. *See* Exs. A1-3 to MSJ Memorandum; Sheppard Depo. at 69; Tackett application (attached as Ex. "H" to Defendant's Rebuttal). The mere fact that the employer elected to replace this employee and offer her a different position does not alone raise an inference of unlawful discrimination.

[6]The Court found Plaintiff's evidence regarding comparators insufficient for lack of record evidence regarding the circumstances. Plaintiff's Motion to Reconsider does not challenge the ruling that Plaintiff failed to show that similarly situated employees were treated more favorably.

*v. Jordan* , 497 F.3d 433, 437 (5th Cir. 2007) (observing that plaintiffs may satisfy the fourth prong of the prima facie case of discrimination with proof that "they were replaced by individuals outside the protected class"). Plaintiff never attempted this method of proving a prima facie case, and the Court simply noted the absence of any such evidence in the record.[7]

        b.      Other Evidence

Although none of her pre-judgment memoranda address this issue, Plaintiff argues that the Court erred in failing to consider Ostrander's remarks as proof of her circumstantial case at the prima facie level. Plaintiff premises this argument on *Laxton v. Gap*, apparently quoting that case as holding that if a remark is offered "as additional evidence of discrimination in an inferential case, helping the plaintiff establish a prima facie case, the judicial standard is less strict." Reconsideration Memorandum at 5 (citing 333 F.3d at 583). *Laxton* contains no such quote.[8] In *Laxton*, the parties assumed the existence of a prima facie case, and statements were offered as "additional evidence of discrimination." The court held that "[t]he relevant inquiry is whether [the declarant] had influence or leverage over [the formal decisionmaker's] decisionmaking." *Id.*, 333 F. 3d at 584 (citations and quotations omitted).

---

[7]Although the Court was attempting to be thorough in addressing this alternative approach, it was not obligated to make arguments on either parties' behalf, and has not attempted to find other ways Plaintiff might have proved her case. The Court applied the test Plaintiff said it should apply. It is the duty of the nonmovant "to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Although the Court endeavors to consider the entire record, "district courts are under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Id*. (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992)).

[8]In fact, the Court was not able to find this quote in any other case, state or federal.

Even if Ostrander's alleged comments could be considered at the prima facie stage of a circumstantial case, and the Court applied *Laxton* as Plaintiff suggests, she still fails to meet the test.  In *Laxton*, the court found a question of fact whether the declarant exercised influence over the disputed decision because she was the primary source of information and wrote the disciplinary warnings that premised the discharge.  *Id*.; *see also Arismendez*, 493 F.3d at 608 (finding declarant was decisionmaker where speaker initiated and signed termination paperwork and provided all information relied upon by titular decisionmaker).  By contrast, *Laxton* distinguished *Wallace v. Methodist Hospital System*, wherein the court found insufficient proof that the declarant influenced the decision.  271 F. 3d 212, 223 (5th Cir. 2001).  Although the declarant (Schmitz) "participated in the investigation of the incident that led to Wallace's termination, Wallace presented no evidence that Schmitz recommended termination or otherwise participated in the decisionmaking process."  *Id*.  For the reason stated in Section II(B)(1) above, Plaintiff has likewise failed to create a question of fact with respect to Ostrander's influence over this decision.  The Court rejects the remaining arguments in Plaintiff's motion.

## III.   Conclusion

For the reasons stated, Defendant's motion for summary judgment regarding the equitable estoppel aspect of the contract claim is granted.  Plaintiff's motion to reconsider is denied.  The parties are instructed to contact the Courtroom Deputy to schedule this matter for a trial on the merits of Plaintiff's FMLA claim.

**SO ORDERED AND ADJUDGED** this the 24th day of September, 2008.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE